# Exhibit A

 **BANK OF AMERICA**

# Legal Order Case Resolution Operations
# Fax Cover Sheet

If transmission problems occur, please contact LOCRO via chat



Fax legal order documentation to: Legal Order Case Resolution Operations **using the fax number as directed in Solution Center.**

## Instructions to Financial Centers:

**Fax all pages:** Enter total pages, including cover sheet, serving party's business card and envelopes: *33*

- Fax double-sided if needed. Be sure to fax right side up. Please confirm fax successful.
- Print and attach fax confirmation document and mail original to DE5-024-02-08.
- Remember to retain a copy of the legal document, fax cover sheet, and confirmation in the Financial Center Legal file.

## Financial Center Information

| | |
|---|---|
| Financial Center Name: | Lawrenceville |
| Cost Center Number: | 0101117 |
| Telephone Number: | 7709953150 |

## Service Information

Complete the serving party information or obtain a business card.

- If business card obtained, fax a copy along with the fax transmittal form.

| | |
|---|---|
| Serving Party Name: | Kimberly Greenway |
| Agency: | Kimberly Greenway Services |
| Telephone Number: | |
| Address: | |
| Date Served: | 12/04/2025 |
| Accepting Associate: | M Henry / Mishell Marcon Cespedes |

How were the documents served to you? (check one)

- ☐ Personal by Agent / Officer / Attorney
- ☐ Regular First Class Mail
- ☐ Express Delivery (UPS / FedEx / Etc.)
- ☐ Personal by Accountholder
- ☐ Certified & / or Registered Mail
- ☐ Other – explain below

## Message:

00-65-9884NSB 05-2023

E-FILED IN OFFICE - GM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
25-C-13435-S3
12/1/2025 4:18 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

*12·4·25*
*KC-5204 GA*
*11:41*

## TONY TONG and
## CINDY TONG

CIVIL ACTION    25-C-13435-S3
NUMBER:_____

PLAINTIFF

VS.

## BANK OF AMERICA, N.A.

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Chelsea R. Sutton, Esq.
Skaar & Feagle, LLP
2374 Main Street, Suite B
Tucker, GA 30084

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This **1st** day of **December**, 20**25**.

2nd day of December, 2025

Tiana P. Garner
Clerk of State Court

By_____Gladys Mack_____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - GM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**25-C-13435-S3**

**12/1/2025 4:18 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

TONY TONG and                          :
CINDY TONG,                            :
                                       :
    Plaintiffs,              :
                                       :     CIVIL ACTION FILE
                                       :     25-C-13435-S3
v.                                     :     NO: _____
                                       :
BANK OF AMERICA, N.A.,                 :
                                       :     **JURY TRIAL DEMANDED**
    Defendant.               :
_____      :

## <u>COMPLAINT FOR DAMAGES</u>

COME NOW PLAINTIFFS, Tony Tong and Cindy Tong (collectively "Plaintiffs" or "the Tongs"), and bring this action against Defendant, Bank of America, N.A. ("Bank of America"), for its violations of the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA"), Article 4A of the Uniform Commercial Code, Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-393 et seq. ("FBPA"), and Georgia's Unfair and Deceptive Practices Toward the Elderly Act, O.C.G.A. § 10-1-850 et seq. ("UDPTEA").

## PARTIES AND PERSONAL JURISDICTION

1.      Plaintiff Tony Tong is a natural person and is authorized by law to bring this action.

1

2.    Plaintiff Cindy Tong is a natural person and is authorized by law to bring this action.

3.    Defendant Bank of America, N.A. is a bank chartered under the laws of the United States.

4.    Bank of America is not registered with Georgia's Secretary of State to do business in the State of Georgia and does not maintain a registered agent in this District.

5.    Bank of America is subject to the jurisdiction and venue of this court through Georgia's long-arm statute, as Bank of America transacts business within the state and has several branches across the State of Georgia. O.C.G.A. § 9-10-91 (1).

6.    Bank of America may be served by registered or certified mail or statutory overnight delivery, return receipt requested, addressed to the secretary of the corporation at its principal office, to wit: Bank of America, N.A., c/o Secretary, Bank of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina 28255. O.C.G.A. § 14-2-504 (b).

## FACTS RELEVANT TO ALL CAUSES

7.  The Tongs are an elderly married couple residing in Chamblee,
    Georgia.

8.  Bank of America is a national bank.

9.  The events described in this Complaint involve a Home Equity Line
    of Credit ("HELOC") and a Checking Account ("Checking Account")
    jointly maintained by the Tongs at Bank of America.

10. Both the HELOC and Checking Account can be accessed through
    Bank of America's online web portal.

11. On February 26, 2025, a person or persons unknown to the Tongs,
    without their authorization or consent, gained remote access to the
    Tongs' Bank of America accounts by remotely hacking their
    computer.

12. An advance of $54,990.00 was then drawn against their HELOC,
    which had previously been inactive for several years, and Bank of
    America then transferred that sum of money to the Tongs' Checking
    Account.

13.    The Tongs did not make, authorize, or consent to either the draw from their HELOC or the transfer of this sum into their Checking Account, nor did they benefit from it.

14.    Shortly after the draw from the HELOC, an international wire transfer was then made from the Tongs' Checking Account to an unknown party located in China. This international wire transfer was labeled as "family support" — likely in an effort to try to avoid the transaction from getting flagged by the bank.

15.    The Tongs did not make, authorize, or consent to this international transfer, nor did they or anyone from their family receive any benefit from it.

16.    The following day, on February 27, 2025, another advancement from the Tongs' HELOC was made for $45,000.00, which was then transferred to the Tongs' Checking Account.

17.    The Tongs did not make, authorize, or consent to either the draw from their HELOC or the transfer of this sum into their Checking Account, nor did they benefit from it.

18.    Just as the day before, the transfer from the HELOC was immediately followed by another international wire — this time in the amount of

4

$49,000.00 — from the Tong's Checking Account to a different bank located in China. Again, the wire was labeled as "family support" by the person or persons making the transfer.

19.   The Tongs did not make, authorize, or consent to this international transfer, nor did they or anyone from their family receive any benefit from it.

20.   A total of $99,990.00 was drawn from the HELOC and transferred into the Tongs' Checking Account during this two-day period.

21.   Similarly, a total of $94,000.00 was then wired from the Tongs' Checking Account to two different banks in China during this same two-day period.

22.   The Tongs do not know who initiated the two advances from their HELOC, leading to the transfer of funds into their Checking Account, or who made the two international wire transfers from their Checking Account to China.

23.   The Tongs did not authorize, or permit anyone on their behalf to authorize, the two advances from their HELOC, which led to the transfer of funds into their Checking Account, or the two international wire transfers from their Checking Account to China.

5

24.    Neither the Tongs nor their family benefited from either the two

advances from their HELOC, which led to the transfer of funds into

their Checking Account, or the two international wire transfers from

their Checking Account to China.

25.    No one from Bank of America obtained authorization from either of

the Tongs for the two advances from their HELOC, which led to the

transfer of funds to their Checking Account, or for the two

international wire transfers from their Checking Account to China.

26.    The Tongs did not authorize the transactions or permit a third-party

to have access to their Bank of America accounts to conduct the

transactions with their login credentials.

27.    Neither the Tongs nor their family received any goods or services in

exchange for the funds wired to China.

28.    Neither the Tongs nor their family derived any other benefit of any

kind whatsoever for the funds wired to China.

29.    On or around March 16, 2025, the Tongs received their bank

statement for their Checking Account for the period February 13,

2025 through March 14, 2025. It was then that they discovered

6

something was seriously wrong, as their Checking Account now had a zero balance.

30. After reviewing the Checking Account statement, Tony went to a local Bank of America branch to try to get to the bottom of what was happening and to make Bank of America aware that there were errors on his and Cindy's Checking Account.

31. While at the local branch, Tony spoke to the branch manager, who directed him to call Bank of America's Fraud Department.

32. Tony then called the Fraud Department and spoke to someone regarding the disputed transactions. This representative told Tony that a text message and phone call were both made to his cell phone number to confirm the transactions. However, Tony disputed that he had authorized any of the transactions, and further advised that he had never received either a telephone call or text message from Bank of America regarding such transactions.

33. Following this telephone call, the Tongs were both shocked and extremely confused as to why Bank of America was claiming they authorized any of the transfers. As English was not their first language, they then requested that their son, Howard Tong

7

("Howard"), who is fluent in English, help them to communicate with Bank of America in the event there was some sort of miscommunication or misunderstanding.

34.    With Howard's assistance, Tony again called Bank of America to dispute the transactions and request more information about the transactions.

35.    On May 14, 2025 Bank of America sent a letter in response to one of Tony's disputes regarding the international wire transfers made from the Tongs' Checking Account. In the letter, Bank of America advised Tony of the following:

TONY C TONG

We've completed our research of your fraud claim on the account listed above.

**What you need to know**

As a result of our research, we've determined that we are unable to honor the claim for the following:

- Our investigation found that the transaction in question was confirmed valid by you via (SMS /MMS) text message response or speaking directly with Fraud Detection employee.
- Our investigation found that the transaction in question was validated using an authentication code sent to a valid phone number belonging to a signer on the account.
- We based our decision on our records and the information you provided when you contacted us about your account. If you have additional information pertaining to the transaction(s), please contact us at the toll-free number listed below.
- You have the right to request the documents we relied on in making our determination and we'll mail the information to you for your records.
- We now consider this claim closed.

8

36.   The Tongs were extremely upset by Bank of America's response,

particularly as Tony had already explained to representatives in Bank

of America's Fraud Department that he had received neither a text

message nor a telephone call from Bank of America to confirm the

international wire transfers to China.

37.   Less than a week later, on May 20, 2025, Bank of America also

responded to Tony's dispute regarding the advances from Plaintiffs'

HELOC, which subsequently led to the transfers of large sums of

money into the Tongs' Checking Account. In this letter, Bank of

America again denied the claim and advised Tony of the following:

TONY C TONG

We've completed our research of your fraud claim on the account listed above.

What you need to know

We completed our research using our records and any information you provided. We're unable to honor the claim for the following reason:

- You benefited directly from the transaction(s) made on this account. The amount of the dispute is still owed to the Bank in accordance with your Account Agreement.

Any remaining balance is owed in accordance with the terms and conditions of your account agreement. Please contact us at the number listed below if you have additional information regarding your claim.

If you have additional information pertaining to the transaction(s), please contact us at the toll-free number listed below. We now consider this claim closed.

38.   Once again, the Tongs were incredibly frustrated and upset as they

had already explained that they neither authorized the advancements

from their HELOC, or the subsequent transfers of those funds into their Checking Account, nor did they benefit from the two international wire transfers to China.

39. What upset the Tongs even more was the fact that Bank of America was now claiming the Tongs owed it nearly $100,000.00 for the fraudulent advancements made from their HELOC.

40. The Tongs were incredibly scared because even though they did not make the fraudulent advancements from the HELOC, and therefore did not owe Bank of America any of the money, they knew that if they did not pay the money to Bank of America, then they risked losing their home.

41. To try and make Bank of America understand that these transactions were made by a fraudster, Tony and his son Howard again contacted the Fraud Department to dispute the transactions and see if they could provide any additional information for Bank of America's consideration. A representative then advised that Bank of America would need the Tongs to provide both a police report and a computer diagnostic report.

42.  Around this same time, the Tongs also made an oral request for all the documents Bank of America relied on in its initial investigation to conclude that the wire transfers to China were authorized. In particular, the Tongs requested that Bank of America provide them with any recordings of the alleged telephone calls between Bank of America and the person claiming to authorize the transactions, as that would be clear evidence to show that neither Tony nor Cindy authorized either of the fraudulent wire transfers.

43.  Despite the request for all of Bank of America's investigative documents, including the recording of the alleged telephone calls, Tony and Howard were told that Bank of America would not provide all the evidence it had in its possession, particularly not any telephone call recording, without a subpoena from an attorney or a request from the police.

44.  Instead, Bank of America sent a letter to Tony dated May 27, 2025 which advised him that it was providing him with the documents Bank of America relied on in its investigation of the Tongs' claims pursuant to his request. However, the "documents" Bank of America provided were not documents at all, but merely two screenshots. The

11

first screenshot was of an excel file and the second screenshot was

some sort of internal authorization code—both of which were

embedded into the body of the letter. Moreover, this second

screenshot of the authorization code was so distorted that most of the

information included was not even legible or discernable.

Importantly, the information provided by Bank of America failed to

include copies of the requested recordings or any of the text message

exchanges authorizing the international wire transfers.

45.    The Tongs were frustrated by Bank of America's lack of transparency

and unwillingness to provide them with all of the information they

claimed to have had in their possession which the Tongs believed

would be clear evidence to show that neither of the Tongs authorized

the advances from their HELOC and subsequent transfers into their

Checking Account or the two international wire transfers from their

Checking Account to the two banks located in China.

46.    Despite the Tongs frustrations with Bank of America's refusal to

provide them with all the investigative documents, the Tongs still did

everything in their power to try and provide Bank of America with

the additional information it had requested, including obtaining a

police report and computer diagnostic report, which were sent to
Bank of America via e-mail on June 23, 2025.

47.    The police report the Tongs sent to Bank of America provided Bank
of America with additional information about how the Tongs
believed their account was hacked.

48.    Similarly, the computer diagnostic report performed by a technician
at Sunsky Computer confirmed that the Tongs' computer had been
hacked through a remote-control customer unit and that all
passwords had been saved at the time of the hacking attack, which
would have enabled the hacker to be able to access the account
remotely without the Tongs' authority or permission.

49.    After providing this information to Bank of America, the Tongs were
hopeful that Bank of America would do the right thing and would
credit their Checking Account with the money that had been stolen
through the international wire transfers. However, that did not
happen.

50.    On July 15, 2025, Bank of America sent another denial letter
regarding the wire transfers made from the Tongs' Checking
Account. In the letter, Bank of America advised the following:

13

**TONY C TONG**

## We've completed our review and are unable to credit your account

### What you need to know

As a result of our research, we can't approve your claim for the following reason:

Our investigation found that the transaction in question was confirmed valid by you via (SMS /MMS) text message response or speaking directly with Fraud Detection employee. Our investigation found that the transaction in question was validated using an authentication code sent to a valid phone number belonging to a signer on the account.

- We based our decision on our records and the information you provided when you contacted us about your account. If you have additional information concerning the disputed transaction(s), please provide any supporting documentation by faxing it to us at 302.525.5957.
- You may request copies of the documents used in our investigation by calling us at 866.540.0763, Monday through Friday, 8 a.m. to 8 p.m. Eastern, and we'll mail the information to you for your records. Please have your claim number when you call.
- We now consider this claim closed.

Thank you for your patience during this review.

51.  Bank of America's response crushed the Tongs, who believed that by providing Bank of America with the documents it requested, then Bank of America would clearly see that they were the victims of fraud and would return their money back to them.

52.  Moreover, Bank of America had also already sent the Tongs a Notice of Intent to Accelerate, which advised that if they did not cure the default on or before July 21, 2025 then Bank of America would not only foreclose on their home, but could also pursue additional costs

that the Tongs would be responsible for despite never authorizing

the advancements from the HELOC. This notice advised:

> **What to expect if the loan is not brought current**
>
> The failure to cure the default on or before July 21, 2025, may result in acceleration of the sums secured by the security instrument and sale of the property. You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.
>
> **FORECLOSURE WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW.**
>
> Bank of America, N.A. and the Noteholder shall be entitled to collect all expenses incurred by Bank of America, N.A. and the Noteholder in pursuing any of their remedies provided in the security instrument, including, but not limited to, reasonable attorney's fees and costs of title evidence, to the full extent permitted by law. If the property is foreclosed upon, the Noteholder may, if permitted by law, pursue a deficiency judgment against you to collect the balance of the loan.
>
> According to your loan documents, Bank of America, N.A. may enter upon and conduct an inspection of the property. The purposes of such an inspection are to (i) observe the physical condition of the property, (ii) verify that the property is occupied, and/or (iii) determine the identity of the occupant. If the default is not cured before the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to the account as provided in your security instrument and as permitted by law.**

53.  Fearful that Bank of America would foreclose on their home, the

Tongs had no other choice but to begin paying on the balance of the

HELOC that was incurred without their authorization or consent.

54.  Bank of America's actions have shocked, confused, and frustrated the

Tongs, who took all the steps necessary upon discovering the fraud

to alert Bank of America and to provide it with all of the documents

necessary to find that they did not authorize any of the transactions.

55.  Bank of America's actions have further caused the Tongs significant

emotional distress in the form of stress, anxiety, worry, confusion,

loss of wellbeing, hopelessness, and loss of sleep.

15

56.    The actions of Bank of America were the direct and proximate cause
of the harm sustained by the Tongs.

57.    Bank of America knew or should have known that the two transfers
from their HELOC into their Checking Account were "errors" as
defined by the EFTA, 15 U.S.C. § 1693f(f). Yet, Bank of America
refused to provisionally credit the Tongs' accounts, did not make a
good faith investigation, did not have a reasonable basis for believing
the Tongs' account was not in error, did not provide the Tongs' with
reproductions of all of its investigative documents despite the Tongs'
request, and knowingly and willfully concluded that the Tongs'
account was not in error despite the unreasonableness of such
conclusion given the evidence available to it.

58.    Similarly, Bank of America knew or should have known that the two
international wires from the Tongs' Checking Account to two
separate banks in China were "remittance transfers" as defined by
the EFTA, 15 U.S.C. § 1693o (g)(2), yet Bank of America did not make
a good faith investigation, refused to refund the Tongs the full
$94,000.00 stolen from their Checking Account, and failed to provide

an explanation responding to the *specific* complaints of the Tongs

when it provided its letter denying any errors had occurred.

59.    Bank of America's actions were intentional, willful, reckless, and in

gross disregard for the Tongs' rights and interests under state and

federal law.

60.    The Tongs have complied with all conditions precedent to bringing

this action.

## CAUSES OF ACTION

## COUNT ONE: THE ELECTRONIC FUNDS TRANSFER ACT

### *Unauthorized EFTs from the Tongs' HELOC to their Checking Account*

61.    Plaintiff Tony Tong is a "consumer" as that term is defined by the

EFTA. 15 U.S.C. § 1693a(6).

62.    Plaintiff Cindy Tong is a "consumer" as that term is defined by the

EFTA. 15 U.S.C. § 1693a(6).

63.    Defendant Bank of America is a "financial institution" as that term is

defined by the EFTA. 15 U.S.C. § 1693a(9).

64.    The Checking Account maintained by the Tongs with Bank of

America was an "account" as that term is defined by the EFTA. 15

U.S.C. § 1693a(2).

17

65.    The electronic funds transfer of $54,990.00 into the Tongs' Checking Account on February 26, 2025 was an "error" as that term is defined by the EFTA. 15 U.S.C. § 1693f(f).

66.    The electronic funds transfer of $45,000.00 into the Tongs' Checking Account on February 27, 2025 was also an "error" as that term is defined by the EFTA. 15 U.S.C. § 1693f(f).

67.    Such transfers were both incorrect and not authorized by the Tong's.

68.    Moreover, the Tong's request for additional information also constitutes an error.

69.    The EFTA requires that if, within 60 days of transmitting a banking statement to a consumer, a financial institution receives oral or written notification that:

> "(1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
> (2) indicates the consumer's belief that documentation, or, in the case of notification pursuant to 1693d(b) of this title, the consumer's account, contains an error and the amount of such error; and
> (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred,"

Then the financial institution shall do the following:

(1) "investigate the alleged error,"

(2) determine whether an error has occurred, and
(3) "report or mail the results of such investigation and
determination to the consumer within ten business days."

70. The Tongs timely notified Bank of America of the error on their

Checking Account through several telephone calls and visits to a

local Bank of America branch.

71. The disputes to Bank of America regarding the errors on their

Checking Account clearly identified the Tongs' name, account

number, their belief that the transfers were in error, and set forth

their belief as to how and when the errors took place.

72. Despite timely notification of the errors on their Checking Account,

Bank of America failed to investigate the errors, falsely determined

that no errors had occurred, and failed to mail the results of any

investigation to the Tongs within ten business days of concluding its

investigation in violation of 15 U.S.C. § 1693f(a).

73. Moreover, a sufficiently reasonable investigation by Bank of America

would have inevitably found that the errors on the account had

occurred; accordingly, Bank of America's failure to correct the errors

is in violation of 15 U.S.C. § 1693f(b).

19

74. Further, despite the Tongs requesting all of Bank of America's investigative documents, Bank of America failed to provide all reproductions with an explanation of its findings in violation of 15 U.S.C. § 1693f(d).

75. Bank of America's violations of the EFTA entitle the Tongs to their actual damages, statutory damages, costs of this action, and a reasonable attorney's fee. 15 U.S.C. § 1693m(a).

76. Bank of America did not provisionally credit the Tongs' account, did not make a good faith investigation of the errors on the Tongs' Checking Account, or did not have a reasonable basis for believing that the Tongs' Checking Account was not in error; alternatively, Bank of America knowingly and willfully concluded that the Checking Account was not in error when such a conclusion could not reasonably have been drawn from the evidence available to it at the time of its investigation; accordingly, the Tongs are entitled to treble their actual damages. 15 U.S.C. § 1693f(e).

## COUNT TWO: THE ELECTRONIC FUNDS TRANSFER ACT
*Unauthorized Remittance Transfers from the Tongs' Checking Account*

20

77.    Plaintiff Tony Tong is both a "consumer" and a "sender" as those

terms are defined by the EFTA. 15 U.S.C. § 1693a(6) and 1693o(g)(4).

78.    Plaintiff Cindy Tong is both a "consumer" and a "sender" as those

terms are defined by the EFTA. 15 U.S.C. § 1693a(6) and 1693o(g)(4).

79.    Defendant Bank of America is both a "financial institution" and a

"remittance transfer provider" as those terms are defined by the

EFTA. 15 U.S.C. § 1693a(9) and 1693o(g)(3).

80.    The Checking Account maintained by the Tongs with Bank of

America was an "account" as that term is defined by the EFTA. 15

U.S.C. § 1693a(2).

81.    The international wire transfer from the Tongs' Checking Account to

China on February 26, 2025 was a "remittance transfer" as that term

is defined by the EFTA. 15 U.S.C. § 1693o(g)(2).

82.    The international wire transfer from the Tongs' Checking Account to

China on February 27, 2025 was a "remittance transfer" as that term

is defined by the EFTA. 15 U.S.C. § 1693o(g)(2).

83.    The EFTA prescribes the following for remittance transfer errors:

> "If a remittance transfer provider receives oral or written
> notice from the sender within 180 days of the promised
> date of delivery that an error occurred with respect to a

remittance transfer, including the amount of currency designated in subsection (a)(3)(A) that was to be sent to the designated recipient of the remittance transfer, using the values of the currency into which the funds should have been exchanged, but was not made available to the designated recipient in the foreign country, the remittance transfer provider shall resolve the error pursuant to this subsection and investigate the reason for the error."

15 U.S.C. § 1693o(d)(1)(A).

Similarly, the EFTA also provides the following remedies:

Not later than 90 days after the date of receipt of a notice from the sender pursuant to subparagraph (A), the remittance transfer provider shall, as applicable to the error and as designated by the sender —

(i)     refund to the sender the total amount of funds tendered by the sender in connection with the remittance transfer which was not properly;

(ii)    make available to the designated recipient, without additional cost to the designated recipient or to the sender, the amount appropriate to resolve the error;

(iii)   provide such other remedy, as determined appropriate by rule of the Bureau for the protection of senders; or

(iv)    provide written notice to the sender that there was no error with an explanation responding to the specific complaint of the sender.

15 U.S.C. § 1693o(d)(1)(B).

84.   The Tongs timely notified Bank of America of the error (i.e. the two remittance transfers from their Checking Account to two different banks in China) through several telephone calls and visits to a local Bank of America branch.

22

85.    Despite timely notification of the errors, Bank of America did not refund the Tongs the full $94,000.00 stolen from their Checking Account in violation of 15 U.S.C. § 1693o(d)(1).

86.    Moreover, a sufficiently reasonable investigation by Bank of America would have inevitably found that errors on the account had occurred; accordingly, Bank of America's failure to correct the errors is in violation of 15 U.S.C. § 1693o(d)(1).

87.    Further, Bank of America failed to respond to each of the Tongs' specific complaints regarding the error in violation of U.S.C. § 1693o(d)(1).

88.    Defendant's violations of the EFTA entitle the Tongs to their actual damages, statutory damages, costs of this action, and a reasonable attorney's fee. 15 U.S.C. § 1693m(a).

## COUNT THREE: ARTICLE 4A, UNIFORM COMMERCIAL CODE

89.    The Tongs reallege and incorporate the foregoing paragraphs into this count as if fully set forth herein.

90.    In the alternative, Article 4A of the Uniform Commercial Code governs all electronic funds transfers that are not covered by the Electronic Funds Transfer Act. O.C.G.A. §§ 11-4A-104 & 108.

23

91.  Under Article 4A, "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." O.C.G.A. § 11-4A-202(a).

92.  The Tongs did not authorize the fraudulent transfer orders from their HELOC to their Checking Account.

93.  The Tongs did not authorize the fraudulent transfer orders from their Checking Account to the two banks in China.

94.  The fraudster (or fraudsters) who initiated the transfer orders lacked any authority, actual or apparent, to act as an agent of the Tongs.

95.  Bank of America did not act pursuant to any agreed security procedure.

96.  In the alternative, any such procedure was not a commercially reasonable method of providing security against unauthorized payment orders.

97.  Bank of America did not accept the payment orders in good faith.

98.  Bank of America knew or should have known that a fraudster was attempting to access the Tongs' accounts, but facilitated multiple transfer orders anyway.

24

99.  Bank of America refused to refund the Tongs any of the money transferred from their HELOC to their Checking Account or from their Checking Account to two banks in China.

100.  The Tongs are entitled to a full and complete refund of the unauthorized transfers plus interest on the refundable amount calculated from the date the bank received payment to the date of the refund. *See* O.C.G.A. § 11-4A-204.

101.  Bank of America represented to the Tongs that it believed the transfers were authorized when it, in fact, it knew of should have known that the transfers were not authorized.

102.  Bank of America continuously and systematically refused to refund the Tongs despite the Tongs being entitled to a refund.

103.  Bank of America has acted in bad faith, been stubbornly litigious, and caused the Tongs unnecessary trouble and expense. Accordingly, the Tongs are also entitled to the expenses of litigation, including a reasonable attorney's fee, pursuant to O.C.G.A. § 13-6-11.

## COUNT FOUR: GEORGIA FAIR BUSINESS PRACTICES ACT

104.  The Tongs reallege and incorporate the foregoing paragraphs into this count as if fully set forth herein.

105.  The Georgia Fair Business Practices Act prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce[.]" O.C.G.A. § 10-1-393(a).

106.  The Georgia Fair Business Practices Act provides that "[i]t is the intent of the General Assembly that this part be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. Section 45(a)(1)), as from time to time amended." O.C.G.A. § 10-1-393(a).

107.  The Electronic Funds Transfer Act contains an administrative enforcement provision similar to the provision in the Fair Debt Collection Practices Act. *Cf.* 15 U.S.C. §§ 1693o & 1692l.

108.  The Georgia Court of Appeals has held that such provision makes a violation of the Fair Debt Collection Practices Act a violation of the

Fair Business Practices Act. *See, 1st Nationwide Collection Agency v.*
*Werner*, 288 Ga.App. 457, 458(1), 654 S.E.2d 428 (2007).

109. Accordingly, Bank of America's violations of the Electronic Funds
Transfer Act also violate the Fair Business Practices Act.

110. Additionally, it was an unfair act for Bank of America not to refund
the $94,000.00 stolen from the Tongs' account, and it was a deceptive
act to inform the Tongs of their right to request documents when it
was never going to provide all of them.

111. Bank of America's conduct in violation of the FBPA was intentional.

112. The Tongs are entitled to an award of general damages, to be trebled
for an intentional violation.

113. The Tongs requests an award of exemplary damages in the maximum
amount permitted by the United States and Georgia Constitutions for
Defendant's intentional violations.

114. The Tongs also request an award of costs and a reasonable attorney's
fee.

## COUNT FIVE: ELDER ABUSE

115. The Tongs reallege and incorporate the foregoing paragraphs into
this count as if fully set forth herein.

27

116. At all relevant times, the Tongs have each been over 60 years of age and have each been an "elder person" as that term is defined by O.C.G.A. § 10 1 850(2).

117. Bank of America's conduct was directed at the Tongs in disregard of each of their rights as an elder person.

118. Bank of America knew or should have known that its conduct was directed at an elder person.

119. Bank of America's conduct caused the Tongs to suffer mental or emotional anguish.

120. Bank of America's violative conduct has caused the Tongs to spend countless hours trying to resolve what never should have been their responsibility to cure, and severe emotional distress in the form of stress, anxiety, worry, confusion, loss of wellbeing, hopelessness, and loss of sleep.

121. The Tongs request their actual damages in an amount to be determined by the jury, pursuant to O.C.G.A. § 10-1-853.

122. The Tongs request punitive damages in an amount to be determined by the jury, pursuant to O.C.G.A. § 10-1-853.

123. The Tongs request reasonable attorney's fees, pursuant to O.C.G.A. § 10-1-853.

124. The Tongs also seek recovery of a civil penalty up to $10,000.00 for each violation, pursuant to O.C.G.A. § 10-1-851.

## JURY TRIAL DEMAND

125. The Tongs demand a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

126. The Tongs hereby demand that Bank of America take affirmative steps to preserve all documents, recordings, data, payment logs, emails, electronic fund transfer logs, wire transfer logs, phone records, dialer records, electronically stored information, and other information or things that relate to the Tongs, the allegations and events described in this Complaint, any third party associated with such, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this action.

127. If Bank of America is aware of any third party who has possession, custody, or control of any such materials, the Tongs further demand that Bank of America request that such third party also take steps to preserve the requested materials. This demand shall not be deemed

to narrow the scope of any independent document preservation duties.

WHEREFORE, Plaintiffs Tony and Cindy Tong respectfully pray the Court enter judgment in their favor and against Defendant Bank of America, as follows:

a) That the Tongs be awarded actual damages, including without limitation, all funds stolen and not recredited to their accounts, plus general damages;

b) That the Tongs be awarded treble and exemplary damages;

c) That the Tongs be awarded punitive damages;

d) That the Tongs be awarded their reasonable attorney's fees and costs and expenses of litigation;

e) That the Tongs be awarded $10,000 in civil penalties for each violation of the Unfair and Deceptive Practices Toward the Elderly Act; and

f) That the Court grant the Tongs any such further relief as is just and proper.

Respectfully submitted,

**SKAAR & FEAGLE, LLP**
By:    */s/ Chelsea R. Sutton*
          Chelsea R. Sutton
          Georgia Bar No. 110863
          csutton@skaarandfeagle.com
          James M. Feagle
          Georgia Bar No. 256916
          jfeagle@skaarandfeagle.com
          2374 Main Street, Suite B
          Tucker, GA 30084
          Telephone: (404) 373-1970
          Facsimile:  (404) 601-1855

          Justin T. Holcombe
          Georgia Bar No. 552100
          jholcombe@skaarandfeagle.com
          Kris Skaar
          Georgia Bar No. 649610
          kskaar@skaarandfeagle.com
          133 Mirramont Lake Drive
          Woodstock, GA 30189
          Telephone: (770) 427-5600
          Facsimile:  (404) 601-1855

          *Attorneys for Plaintiffs*

31